THE AMERICAN EMIGRANT COMPANY V. CLARK.

1. **Bills and Notes:** PAYABLE IN "CURRENCY": NEGOTIABILITY. An instrument in the form of commercial paper, except that it is payable in currency or current funds, may be shown to be negotiable by proof that, under customs prevailing at the time and place of its execution, the term used to describe the funds in which it is made payable was understood to mean money, and that such funds circulated as money.

2. ————: CONTRACT: BANK. A bank check is a written contract, and all negotiations between the drawer and drawee with respect to the liabilities of the parties thereto are deemed to be merged in the check, which is regarded in law as fully expressing their intentions, so that parol evidence is not admissible to explain or vary it.

3. ————: LIABILITY OF DRAWER: BANK. The fact that a bank upon which the check is drawn has suspended, and that the drawer had funds therein to a greater amount than the amount of the check, and that these facts were known to the drawee at the time he accepted the check, do not affect the liability of the drawer thereon.

4. ————: ————: NEGOTIABILITY. The intention of the drawer of a check that it should not be negotiable will not affect its negotiability.

5. ————: CONTRACT: FRAUD. Fraud in refusing to enter into a written agreement that a check should be held by the drawee without recourse upon the drawer cannot be set up as a ground for admitting evidence to change the contract embodied in the check.

*Appeal from Polk Circuit Court.*

WEDNESDAY, MARCH 21.

ACTION against the drawer of a check which is in the following words:

"No. ——             DES MOINES, IOWA, January 25, 1875.

B. F. ALLEN'S BANK.

Pay to G. W. Savery, or bearer, five hundred dollars in current funds.                    G. W. CLARK,
                                        per J. S. C."

The petition alleges transfer of the check to plaintiffs and demand and notice of non-payment, and that the term "current funds" by custom was understood to mean U. S. treasury

notes and other money.  The answer denies generally the allegations of the petition, and avers that plaintiff is not the real party in interest, that the check is not negotiable by its terms, nor intended to be; that it was given to the payee by way of barter and exchange; that the bank on which it was drawn had at the time suspended payment and was insolvent, and the check was given in exchange for certain property at exorbitant prices, and was intended to transfer to the payee a claim held against the bank; that by the terms of such exchange, agreed upon by the parties, the check was to be taken without any recourse upon the drawer, that the payee agreed to enter into a written contract to that effect, but, after obtaining possession of the check, refused so to do.  The answer sets out the negotiation leading to the exchange and the agreement entered into by the parties with great particularity, and charges fraud and deceit against the payee in the transaction.  It is also alleged that plaintiff is not a *bona fide* holder of the paper, but received it with notice of its infirmities.

The cause was tried to a jury and a verdict and judgment had for defendant.  Plaintiff appeals.

*Wright, Gatch & Wright* and *J. A. Harvey*, for appellant.

*Phillips, Goode & Phillips*, for appellee.

BECK, J.—I.  The plaintiff introduced testimony tending to prove that, by a custom prevailing at the time and place of the execution of the check in suit, the term *current funds* used in the instrument meant money, or such funds as circulated as money, and that under such custom paper payable in current funds was negotiable.  The Circuit Court in instructions to the jury recognized the rule adopted by this court that an instrument in the form of commercial paper, except that it is payable in currency, or current funds, may be shown to be negotiable by proof that, under customs prevailing at the time and place of its execution, the term used to describe the funds in which it is made payable was understood to mean money, and that such funds circulated as money.  *Haddock v. Wood*, 46 Iowa, 433; *Rindskoff Bro's & Co. v. Barrett*, 11

Iowa, 172; s. c., 14 Iowa, 101; *Pilmer v. The Branch State Bank at Des Moines*, 16 Iowa, 321; *Huse v. Hamlin*, 29 Iowa, 501.

Counsel for defendant question the soundness of this rule and devote much time to discussing this branch of the case. Defendant took no exceptions to the instructions presenting the rule, nor does he appeal. He cannot now complain of the instructions. Plaintiff assents to the correctness of the rule. If it were not settled by decisions of this court it would be regarded as the law of this case.

II. Evidence was introduced upon the part of defendant tending to prove that the check in suit was given in part payment or exchange for livery outfit, under an agreement that it should be received by the payee without recourse upon defendant, and that by the terms of the bargain the payee was to execute a writing to that effect; but after the delivery of the check to him he refused to execute such writing, and upon such refusal defendant demanded the return of the check and offered to rescind the contract between them, which was not assented to by the payee. There appeared to be no dispute as to the terms of the transaction except upon the point of defendant's liability upon the check, and other checks of like import, in case they were not paid by the bank. Upon this point the court, against plaintiff's objection, admitted testimony; the negotiations of the parties and other matters tending to prove that defendant, under the agreement, was not to be liable on the checks, were shown. There was also testimony introduced by plaintiff tending to show that it was a good faith holder of the paper without notice of any defense or equity set up by defendant.

The court gave instructions to the jury correctly stating the rules relating to the liability of the drawer of commercial paper and the rights of *bona fide* holders thereof without notice. We may say just here that the instructions given upon these points, as well as upon the effect of custom to render paper of the character of the check in suit negotiable, does not, in our opinion, so clearly present the rules of law applicable to these questions as instructions asked by plaintiff, though they

are sufficiently intelligible and explicit. It was not error to refuse those asked by plaintiff presenting the same correct rules expressed in those given by the court.

An instruction in the following language, requested by plaintiff, was refused:

"5. All negotiations and conversations preliminary to a written contract are by law merged in the contract as finally executed. You will, therefore, treat all of the talk or negotiations of the parties to the check in question, had prior to the drawing thereof, with respect to their rights and liabilities as parties thereto (if you find there was any such talk or negotiations), as merged in the check, and the check as fully expressing their intention and contract with respect to such rights and liabilities."

Regarding the check as a contract complete in itself, which, as all other commercial paper, it is, the correctness of this instruction cannot be doubted. It is based upon familiar elementary doctrines of the law and presents a rule of frequent application by the courts. The rule extends to commercial paper. See *Atkinson v. Blair*, 38 Iowa, 156; *Atherton v. Dearmond*, 33 Id., 353. Citation of other authorities in support of this rule is not necessary.

The contract expressed by this check is to the effect that if it be not paid upon demand of the drawee and notice to the maker, the drawer himself shall be liable thereon. While such a contract is not expressed by the words of the instrument, it is implied by the law and the drawer is bound accordingly. Now it is plain that evidence showing an agreement that defendant should not be liable in any event to pay the check would contradict the contract of the parties, which, by implication of law, they entered into upon the execution of the check. The drawer of the check cannot therefore show, in the absence of express contract to that effect upon the face of the instrument, that the payee agreed not to hold the maker responsible. *Fairfield v. Hancock*, 34 Me., 93; *Gregory v. Hart*, 7 Wis., 532; *Pack v. Thomas*, 13 S. & M., 11; *Ely v. Kilborn*, 5 Den., 514; *Isaacs v. Elkins*, 11 Vt., 679.

But it is said by counsel for defendant "that parol proof is admissible to show that the contract of an indorser in blank was limited and different from what the law implied." This rule is recognized in *Harrison v. McKim*, 18 Iowa, 485. The ground of this decision, as stated by one justice, is "that a blank indorsement not filled up is not a written instrument, and hence not entitled to its immunities nor subject to its restraints." The other member of the court gave, we think, a better reason for the rule, namely: "While a blank indorsement is, in law, an authority to the indorsee to fill it up as absolute and unconditional, yet where the actual agreement between the parties has limited that authority, the filling of the blank by the indorsee in any other manner than according to that agreement, is a fraud upon the indorser, which vitiates the writing, and, of course, opens the door for proof as to what the real contract was." Whatever be the foundation of the rule, it is very plain that it does not extend to the case of an agreement between the drawer and payee of commercial paper. In such case the contract as raised by the law is upon the face of the instrument and there is no blank to be filled whereby the payee may change the contract. The instruction refused, as set out above, presented a correct rule of the law applicable to the issues and evidence in the case. It was erroneously refused.

III. The court gave the following instruction:

"9. If the jury believe from the evidence that the defendant, G. W. Clark, by J. S. Clark, his agent, made a trade with George W. Savery for his livery outfit on the terms and conditions that Savery was to receive in payment thereof " Allen paper," or " Allen checks;" and if both Savery and Clark knew at the time that B. F. Allen's bank had suspended and was closed, and if you believe defendant had funds on deposit, at the time, to his credit at said bank to an amount greater than the amounts of said checks given by Clark for said livery, and if Clark practiced no fraud upon Savery to induce him to take said checks in payment, nor withdrew his funds from the bank, nor did any act to prevent said checks from being honored and paid by said bank, then Savery could not recover

upon said checks against Clark as maker; and the burden of proof is upon the defendant to show such agreement."

This instruction leaves out of view the fact that the check, in itself, constituted a contract, and is based upon the thought that the liability of defendant depended wholly upon the contract of sale or exchange of the property. The simple transaction, as contemplated by the instruction, is this: The defendant gave his check for the livery outfit. Here was an exchange of the check, which is a contract of defendant to pay the amount specified upon default of the drawee after demand and notice to the drawer, for the livery outfit. There are two contracts in the case: 1. the contract of exchange; 2, the contract, the check, given in payment by defendant for the property acquired by him. The consideration paid by defendant on the first contract was the check, the second contract. Defendant's liability thereon has been stated, and, as we have seen, he cannot relieve himself of liability by showing an agreement that he should not be liable upon the paper. It follows, therefore, that the conditions contemplated in the instruction, namely: the knowledge of the parties of the suspension of the bank, the funds of defendant in the bank, etc., could not relieve defendant of liability, for their existence in no manner shaped the legal effect of the contract embodied in the check. Defendant was liable all the same under the contract he entered into upon executing the check, whether he had or had not money in the bank and whether the bank had or had not suspended.

The instruction would be correct and adapted to the case had defendant transferred, without recourse, a claim upon the suspended bank to the amount of the check. But the instrument, as we have seen, has a further and a very different effect; it fixes liability upon defendant for the amount of money expressed therein upon certain contingencies. The instruction is clearly erroneous.

IV. Certain instructions intended to guide the jury in determining whether the paper is negotiable express the thought that its negotiability depended upon the intention of the drawer. In this respect they are clearly erroneous. An

unknown and unexpressed intention of a party to a contract can have no influence in its construction. The law presumes that his intentions were in accord with the language of the instrument, or with its terms and conditions discovered by other methods of reaching its true meaning. In this case the negotiability of the check is determined by ascertaining the meaning of the words "current funds," and the custom in regard to their use. The mere private intention of defendant to execute a paper which would not be negotiable could not be considered in determining the question of defendant's liability.

V. Several questions arising upon the admission of testimony are discussed in the briefs of counsel. They need not be separately considered, as the principles controlling the disposition of the foregoing point will readily be understood to be applicable to those questions of evidence. For the errors pointed out in the foregoing discussion the judgment of the Circuit Court is

REVERSED.

### SUPPLEMENTAL OPINION.

A petition for a rehearing was filed in this case, which demands a few words in addition to what is said in the original opinion, to the end that our decision may not be misunderstood. Counsel for defendant seem to misconceive the effect of our ruling. When such eminent counsel misunderstand a decision, there would appear to be occasion for greater explicitness.

The point made in the petition for rehearing is this: If plaintiff is not a *bona fide* holder, the fraud of the drawer of the check may be shown to defeat the action. Fraud of any character pertaining to the transaction may be shown to defeat paper as between the original parties, or as between the drawer and one who is not a *bona fide* holder. It is, therefore, claimed that the defendant may show that Savery, prior to the execution of the check, agreed to execute a writing binding himself to take the check without recourse on defendant, which he afterward fraudulently refused

5. ——: contract: fraud.

to do, and that, because he can show such fraud in defense of an action, evidence thereof may be introduced to change or modify the contract expressed in the check. The point of error in the position is this: The check is in no different or other form than was agreed upon. It is not claimed that an agreement to the effect that no recourse was to be had against defendant was to be incorporated in the check, and that Savery through fraud prevented it. But the fraud complained of consists in not executing another and a distinct agreement. Now it is very plain that preliminary conversations or prior agreements cannot be shown to change the contract found in the check. The fraud in the plaintiff in not performing such prior agreement constitutes a defense to the action on the check; but that prior agreement cannot be used to modify the check itself so as to give it the effect claimed by defendant, whereby he is not bound to pay it upon the default of the drawee.

The counsel cite cases which hold that where terms of an agreement are omitted, through fraud, to be incorporated in an instrument it will have the effect intended by the agreement of the parties. This is so, but the case in hand is very different in its facts from those cited. The terms of the check as agreed upon are found in it. The fraud of defendant related to another and distinct agreement. While it may have been shown to defeat recovery by one not a *bona fide* holder, it could not be received in evidence to change the contract set out in the check.

The theory of the court below and of counsel in the petition for rehearing is that the fraud in refusing to enter into the written agreement set up by defendant is the ground for admitting evidence of this agreement, thereby to change the contract embodied in the check. But the law will not permit that contract to be so altered. The fraud, if it existed, may be shown as a defense to the action by one not a *bona fide* holder.

It will be readily discovered that the rights of the parties and the remedies are not the same under the law, as we recognize it, as they would be under the rule recognized by the Circuit Court. Under this rule the prior agreement and the

fraud being shown, the check, as a contract, assumes a different form. The plaintiff's right of action is at once cut off; there the case stops. Plaintiff could recover in no event, for under the contract as changed he never was liable. Under the true rule of the law the defendant was liable on the check; to escape liability he may show the prior agreement and the fraud. It will be observed that the pleadings must be different under the two rules. We doubt not cases may arise when the rights and remedies of the parties would be prejudicially affected by a failure to apply the true rule. But it is not for us to point out such cases; it is sufficient to know that we are following the beaten path marked out by the law.

REVERSED.